UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES E. ZUNNER,	05-CV-0049E(Sr)

       Petitioner,

  -vs-	MEMORANDUM

       and

JO ANNE BARNHART,
  Commissioner of Social Security,	ORDER[1]

       Respondent.

---

## INTRODUCTION & BACKGROUND

Plaintiff James E. Zunner challenges a determination by an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since approximately August 15, 2002, due to heart problems and a bipolar disorder. Plaintiff contends that his impairment has rendered him unable to work. He therefore asserts that he is entitled to payment of disability benefits under the Act.

Plaintiff filed an application for Disability Insurance benefits and Supplemental Security Income payments on October 4, 2002. The Social Security Administration denied his application and thereafter and pursuant to plaintiff's request, an administrative hearing was held before Administrative Law Judge ("ALJ") Larry K. Banks on July 16, 2004 at which time plaintiff appeared, with counsel. The only testimony taken was that from the plaintiff and a vocational expert. The ALJ

---

[1] This decision may be cited in whole or in any part.

considered the case *de novo* and, on September 2, 2004, issued a decision also denying plaintiff's application.  On January 13, 2005, the Appeals Council denied plaintiff's request for review.  The ALJ's September 2, 2004 decision became the Commissioner's final decision in this case when the Appeals Council denied this request for review.  Plaintiff filed the current civil action on January 25, 2005, challenging the defendant Commissioner's final decision.

On March 29, 2005 the Administrative Record was filed with the Court and on July 5, 2005 the matter was referred to Magistrate Judge Schroeder for all proceedings and to report and recommend regarding disposition.  On August 11, 2005, the plaintiff and defendant, respectively, filed cross motions for Judgment on the Pleadings pursuant to Rule 12© of the Federal Rules of Civil Procedure.  After full briefing, Magistrate Judge Schroeder heard oral argument on November 10, 2005, and reserved decision at that time.  This Court now rescinds the order of referral and shall determine the matter based upon the record and a thorough review of all of the parties' filings and the argument presented to the Magistrate Judge.

**DISCUSSION**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§405(g), 1383(c)(3); *Wagner* v. *Sec'y of Health and Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's final decision will only be reversed if it is not supported by substantial evidence or there has been a legal error.  *See Grey* v. *Heckler*, 721 F.2d 41,

46 (2d Cir. 1983). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson* v. *Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's findings (as stated by the ALJ), must be upheld. *See Rutherford* v. *Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams* v. *Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's final decision must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ" from the Commissioner's or ALJ's. *Rosado* v. *Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford deference to the ALJ's determinations, upheld by the Commissioner, and will not substitute "its own judgment for that of the [Commissioner or ALJ], even if it might justifiably have reached a different result upon a *de novo* review." *Valente* v. *Sec'y of Health and Human Servs.,* 733 F.2d 1037, 1041 (2d Cir. 1984). However, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Grey* v. *Heckler*, *supra* at 44; *Marcus* v. *Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. *See* 20 C.F.R. §§404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in *Bowen* v. *Yuckert*, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291 (1987), and it remains the proper approach for analyzing whether a claimant is disabled. This five-step analysis is as follows:

> (1) the first consideration is whether the claimant is currently performing substantial gainful work activity. If he is, he is not disabled.
> (2) If the claimant is not currently performing substantial gainful work activity, the next consideration is whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.
> (3) If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will deem him disabled regardless of the his age, education or work experience.
> (4) If the claimant does not have a listed impairment, the next inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity ("RFC") to perform his past relevant work. If so, he is considered to be not disabled.
> (5) If the claimant is unable to perform his past relevant work, the Commissioner must then determine whether there is other work in significant numbers in the national economy which the claimant could perform. If so, he is considered to be not disabled. If not, he is determined to be disabled.

*Berry* v. *Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); *see also Rosa* v. *Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth step. *See Bowen*, *supra* at 146, fn.5; *Ferraris* v. *Heckler*, 728 F.2d 582, 584 (2d Cir. 1984). The fifth and final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national or regional economy that a person having the claimant's qualifications could perform. *See* 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(f); *Heckler* v. *Campbell*, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954 (1983).

The ALJ (and hence, the Commissioner) in the instant case made the following findings with regard to the five-step analysis set forth above:

(1) Plaintiff had not engaged in substantial gainful work activity since the onset of his alleged disability ®. at 15);[2]

(2) Plaintiff's heart disease, chronic ischemic and affective disorders are "severe" impairments within the meaning of the Act ®. at 17);

(3) Plaintiff's impairments, either singly or in combination, however, did not meet the criteria necessary for finding a disabling impairment as listed in Appendix 1 of the regulations ®. at 17);

(4) Plaintiff retained the residual functional capacity ("RFC") for low stress sedentary exertional level work (i.e., simple routine unskilled tasks) with no climbing (but he could perform other postural movements such as stooping on an occasional basis)

---

[2] Citations to the underlying administrative record are designated as "R."

and hence could not perform his past relevant work because that involved more than a sedentary level of exertion and was more than routine unskilled work (R. at 18 - 20); and

(5) Considering Plaintiff's status as a younger individual, his high school (or equivalent) education, no transferrable skills from past relevant work, and a RFC for low stress sedentary work, the ALJ determined that Medical-Vocational Rule 201.28 directed a finding of "not disabled" because there were other jobs in significant numbers in the national economy which the claimant could perform consistent with his age, education and RFC (R. at 20 - 22). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his September 2, 2004 decision. (R. at 22).

The focus of plaintiff's claim in this case is on the ALJ's findings with respect to the fourth and fifth steps in his analysis — to wit, his findings regarding plaintiff's RFC and, given those findings, the availability of jobs within those limitations.

In his complaint plaintiff appeals the Commissioner's final decision, alleging that "[t]he decision of the hearing examiner, as affirmed by the Appeals Council, was erroneous and not supported by either substantial evidence on the record or the applicable law." (Dkt. #1, ¶10). In plaintiff's Memorandum of Law in support of his motion for judgment on the pleadings, plaintiff claims that the ALJ's findings regarding his RFC were not supported by substantial evidence, that the ALJ did not make sufficient efforts to obtain RFC assessment information from his treating cardiologist and that the ALJ improperly discredited his complaints of physical

limitation. Plaintiff takes no issue with the ALJ's findings regarding his mental impairments, nor does he challenge the conclusion that plaintiff did not exhibit significant psychiatric symptoms that would limit his vocational capacities. Rather, plaintiff's challenge to the ALJ's findings relates to those regarding the physical limitations caused by his heart condition.

In her Answer, the defendant claims that plaintiff has not shown good cause pursuant to 42 U.S.C. §405(g) to warrant remand (Dkt. #3, ¶8) and, as an affirmative defense, alleges that the findings of fact of the Commissioner of Social Security are supported by substantial evidence and are conclusive (Dkt. #3, ¶12). In her motion for judgment on the pleadings, defendant reminds the Court of its limited scope of review and presents detailed argument regarding the affirmative defense (Dkt. #8, ¶¶13 - 20).

Plaintiff's first argument is that there is not substantial evidence in the record to support the ALJ's RFC assessment. In particular, plaintiff argues that the ALJ did not specify any medical evidence in support of his RFC determinations. Having reviewed the ALJ's decision and the administrative record in light of plaintiff's arguments, this Court finds that the ALJ's findings relative to plaintiff's RFC must be vacated and the matter remanded.

The ALJ's determination that plaintiff retains a RFC to perform sedentary level work does not cite to specific evidence in support of this finding and merely states that "[a]fter careful consideration of all the evidence, including the testimony of the claimant and the exhibits not specifically cited in this decision, the undersigned finds

that the claimant retains the residual functional capacity to perform sedentary exertional level work with no climbing on ropes/ladders/scaffolds, but he can perform other postural movements such as stooping on an occasional basis ***" ®. at 18 - 19)[3].

This conclusory statement is in marked contrast to the evidence the ALJ cites in support of his other findings. For example, with respect to the ALJ's findings regarding steps two and three of the required analysis, the decision contains discussion of medical evidence, including medical information and opinions from Dr. John Visco, plaintiff's treating cardiologist,, Dr. Douglas Roberts, who performed a Regular Exercise Stress Test on plaintiff, Dr. Mark Swetz, who performed an internal medical consultive examination of plaintiff and Dr. Leon Levinsky, who performed the procedure to insert plaintiff's pacemaker in November, 2003. ®. at 16 - 17). After discussing this evidence, the ALJ made the finding that, while severe, plaintiff's impairments, either singly or in combination, did not meet the criteria necessary for finding a disabling impairment as listed in Appendix 1 of the regulations.

The ALJ's examination and determination of the claimant's RFC came next and was not so copious. The ALJ noted the standards for this assessment, discussed additional factors relevant to this standard and declared that his findings had been arrived at "[a]fter careful consideration of all of the evidence". ®. at 18). However, with the exception of some comments about plaintiff's testimony at the hearing and

---

[3]Further RFC findings were made with respect to plaintiff's emotional and mental limitations, and the decision also discussed evidence and opinions presented by the consulting psychologist in this regard (*see* R. at 19), however, as stated *supra*, the findings regarding plaintiff's mental impairments have not been questioned by plaintiff herein are therefore not relevant in this case.

referral to the Daily Activities Questionnaire he submitted when he originally applied for benefits ®. at 98 - 109), the decision details no specific evidence it found determinative, or even relevant.  On the basis of the ALJ's insufficient findings here, the Court cannot determine whether his conclusory statement that plaintiff could carry out sedentary work is supported by substantial evidence and therefore the case must be remanded.  *Ferraris* v. *Heckler*, *supra,* 728 F.2d at 587; *see also White* v. *Secretary of Health and Human* Services, 910 F.2d 64, 65 (2d Cir. 1990) (*citing Ferraris,* the Court found that "the failure to specify the basis for a conclusion as to a residual functional capacity is reason enough to vacate a decision of the Secretary*");* *Treadwell* v. *Schweiker*, 698 F.2d 137, 142 (2d Cir.1983) ("the propriety of agency action must be evaluated on the basis of stated reasons.");  *Dieni* v. *Callahan*, 1997 WL 205335, *2 (N.D.N.Y. 1997) ("Although the ALJ summarized certain medical records, he wholly failed to indicate what portions of the record supported his conclusion.").

Further, the ALJ's decision noted the plaintiff's testimony about the progression of his limitations and discredited it because of a lack of medical evidence to support it.  However, the record clearly contains evidence of an escalation of plaintiff's heart problems since the filing of this Daily Activities Questionnaire, yet the ALJ's decision makes no mention of this in his findings.[4]  Specifically, in plaintiff's statement when he requested the hearing, he stated that his chest pain and

---

[4] The Daily Activities Questionnaire was completed and submitted on October 16, 2002.

tiredness had grown worse and he was more limited due to pain and fatigue (R. at 114) and in his record of recent medical treatment, filed in May, 2004 (60 days before the hearing), plaintiff indicated that the doctors listed therein had told him that his condition was going to continue to get worse (R. at 117).

Based on this, the Court finds that the ALJ failed in his obligation to develop the record with respect to this notice of recent medical treatment which is highly relevant in evaluating plaintiff's claim regarding the escalation of symptoms and limitations in light of plaintiff's clear and consistent history of progression of disease[5]. In this regard, the ALJ did not properly consider all of plaintiff's stated symptoms which are reasonably consistent with the objective medical evidence. *See* 20 C.F.R.§§404.1529, 416.929 and Social Security Ruling 96-7p.

Although not the sole deciding factor herein, the decision can also be found to be not supported by substantial evidence because it places too much emphasis on what evidence is lacking. For example, in finding that plaintiff's impairments were "severe" but not severe enough to meet the Appendix 1 listed impairments (i.e., steps two and three), the decision states that "[w]ith respect to the claimant's heart condition, none of his evaluating program physicians has concluded that performance of exercise testing would present a significant risk to the claimant" and "[a]lthough in October 2003, he had left ventricular ejection fraction of less than 30 percent, there is no evidence that he has inability to perform on an exercise test at a workload

---

[5] The administrative record is replete with evidence of the progressive and degenerative nature of plaintiff's heart disease.

equivalent to 5 METs or less due to chronic heart failure$_{***}$". (R. at 17). Further, in deciding that plaintiff's testimony regarding having to rest and nap frequently throughout the day was not credible, the decision stated that the objective medical evidence was to the contrary because "[n]one of his treating, examining or consulting physicians has opined that he is totally disabled. His treating and examining sources did not advise him to stop working or rest/sleep during the day for two or more hours. His treating physician only recommended that he quit smoking loose weight reduction [sic] and control his lipids." (R. at 21). This assessment does not properly consider the medical sources with respect to medical opinions and judgments about the nature and severity of plaintiff's impairments and resulting limitations because there are no such opinions or judgments regarding plaintiff's limitations found in the record.

The only functional limitation information the Court finds in the record is in the report of Dr. Swetz which states that plaintiff is "currently with moderate to marked functional limitation" (R. at 160). The ALJ, however, does not indicate what he interpreted this to mean or whether he considered it as relevant or determinative in his RFC findings. Further, the Court finds that the treating physician's *advice* to plaintiff to quit smoking, lose weight and control his lipids are not opinions regarding functional limitations and are irrelevant to such consideration (*see* 20 C.F.R. §§404.1527 & 416.927 and Social Security Rulings 9602p & 96-6p).

Plaintiff also argues that the ALJ improperly evaluated plaintiff's credibility when he discredited his complaints of physical limitations. Plaintiff testified that he

had angina attacks approximately every other day, not necessarily related to physical exertion, and needed to rest or sleep for approximately thirty (30) minutes thereafter to recover therefrom. ®. at 38 - 41) He also testified that he usually needs to nap once or twice a day because he gets tired during his daily routine ®. at 43 - 46)[6]. The vocational expert testified that, if the ALJ accepted the limitation of plaintiff having to sleep at least two or more hours throughout the day, "there would be no work anywhere" that plaintiff could perform ®. at 49). If it was not accepted, the expert provided evidence of several jobs she opined were available to plaintiff. Accepting or rejecting plaintiff's testimony in this regard was therefore crucial to a finding of disability.

The ALJ, however, did not accept these limitations, finding instead that the objective medical evidence did not support plaintiff's subjective complaints in this regard. Specifically, the decision stated:

> "The undersigned finds the vocational expert's testimony credible; however, the undersigned finds that the claimant does not possess the additional limitation of having to sleep or lie down and rest two or more hours during the day. The claimant's impairments, heart disease, chronic ischemic and affective disorders, are reasonably anticipated to cause chest pain, shortness of breath and fatigue. However, his assertions regarding debilitating subjective symptoms appear to be exaggerated given the

---

[6]Plaintiff testified that, during a normal day, he would awake at approximately 6:00 a.m, begin his daily activities and retire for his first nap at approximately 9:00 a.m. He would nap until approximately noon or 1:00 p.m. and then continue his daily activities. He would usually have to nap again from approximately 3:00 p.m. until it was time to prepare dinner, at approximately 5:00 or 6:00 p.m. He usually went to bed at night by 10:00 p.m.

> objective medical evidence and other evidence of record. None of his treating, examining or consulting physicians has opined that he is totally disabled. His treating and examining sources did not advise him to stop working or rest/sleep during the day for two or more hours. His treating physician only recommended that he quit smoking loose weight reduction [sic] and control his lipids. He achieved seven MET workload on exercising testing and EKG pattern showed no diagnostic ST segment depression."

®. at 21). For the reasons stated above, the Court finds that the ALJ improperly evaluated plaintiff's credibility. The objective medical evidence, as a whole, clearly supports the possibility of a progression of plaintiff's heart disease and hence a worsening of his symptoms and limitations. This improper evaluation, coupled with the failure to develop the record with additional evidence of recent medical treatment of which it was notified, constitutes error in this case.

Therefore, after carefully examining the administrative record, this Court finds that substantial evidence did not support the ALJ's decision in this case and that the ALJ rested his decision on improper evaluation and application of the law and regulations regarding plaintiff's testimony and his duty to fully develop the record. Accordingly, it is hereby

**ORDERED** that defendant's Motion for Judgment on the Pleadings (Dkt. #7) is hereby **DENIED** and plaintiff's Motion for Judgment on the Pleadings (Dkt. #6) is **GRANTED** and it is further

**ORDERED** that this matter is remanded for further proceedings consistent with this opinion. On remand the ALJ should further develop the record with specific information regarding plaintiff's functional limitations and recent medical treatment for the alleged worsening of his heart disease. The ALJ shall also properly consider this and all of the evidence in evaluating the credibility of plaintiff's testimony and to determine his residual functional capacity consistent with all applicable laws and regulations.

DATED:   Buffalo, N.Y.

February 28, 2007

*/s/ John T. Elfvin*
JOHN T. ELFVIN
S.U.S.D.J.